IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSHUA LYONS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | EP-23-CV-00092-DB |
| JASON SMITH, et al., | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION REGARDING PLAINTIFF'S "DEMAND FOR CLARIFICATION"

On this day, the Court considered the above-captioned case. On June 5, 2023, Plaintiff Joshua Lyons ("Plaintiff") filed a Motion for Summary Judgment ("Plaintiff's Motion"). ECF No. 21.[1] Four days later, Defendants Jason Smith, Jason Robinson, Patrick Brookshier, and John Valenzuela ("DPS Defendants") filed their own Motion for Summary Judgment ("Defendants' Motion") and timely response to Plaintiff's Motion. ECF No. 22. On July 18, 2023, this Court denied Plaintiff's Motion and granted Defendants' Motion. ECF No. 31. The Court did not include a memorandum opinion in this order. Plaintiff subsequently filed a "Demand for Clarification," ECF No. 35, to which the Court now responds.

### BACKGROUND

Plaintiff filed his Complaint on March 6, 2023, alleging unreasonable search and seizure and false arrest in violation of the Fourth and Fifth Amendments of the United States Constitution and violations of 42 U.S.C. Sec. 1983 (civil action for deprivation of rights), 42 U.S.C. Sec. 1985(3) (conspiracy to interfere with civil rights – depriving persons of rights or

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

privileges), 18 U.S.C. Sec. 241 (conspiracy against rights), 18 U.S.C. Sec. 242 (deprivation of rights under color of law), 18 U.S.C. Sec. 1001(3) (false writing or document) and 18 U.S.C. Sec. 113b – 2331(5) (definition of the term "domestic terrorism"). Complaint ("Compl.") ECF No. 3.

This case arises out of a traffic stop involving Plaintiff's vehicle and Plaintiff's subsequent arrest. The entirety of the traffic stop (two hours) is captured on a body-camera, worn by Trooper Jason Smith. *See* Videotape: Traffic Stop of Joshua Lyons ("Video of Traffic Stop"), F:\EL\Chambers\Judge_Briones\Media Filings\tick136510480-tick136524855-video1.mp4 (September 9, 2022) (on file with Court). On September 9, 2022, Plaintiff was pulled over in Hudspeth County, Texas, by Texas Department of Public Safety ("DPS") Trooper Jason Smith ("Defendant Smith"). Answer 1, ECF No. 14. Defendant Smith conducted the traffic stop because he suspected Plaintiff was in violation of multiple traffic laws within the State of Texas. *Id.* Defendant Smith observed that Plaintiff was driving at a speed above the posted limit in a vehicle that did not have a registration sticker. *Id.* At the time of the traffic stop, Plaintiff refused to identify himself to Defendant Smith, despite being asked to do so multiple times. *See* Video of Traffic Stop.

Shortly after pulling Plaintiff over, multiple other officers from various agencies arrived at the traffic stop. *Id.* These officers included DPS Troopers Jason Robinson, Patrick Brookshier and John Valenzuela and Hudspeth County Sheriff's Deputies Carlos Solis and Stephanie Cardoza. *Id*; *see also* Answer 1, ECF No. 14.

About forty-nine minutes into the traffic stop, Plaintiff voluntarily exits his

2

vehicle and is arrested. *See* Video of Traffic Stop; *see also* Answer 1, ECF No. 14. At the time he exited the vehicle, Defendants advised Plaintiff that he had violated multiple state laws including speeding and failing to identify himself to the officers. *See* Video of Traffic Stop. Plaintiff left two large, unleashed dogs in the car, and the Officers had no idea whether they were dangerous or not. A large portion of the traffic stop was dedicated to figuring out what to do with these dogs to keep them safe. *See* Video of Traffic Stop.

After Plaintiff got out of his vehicle, "a probable cause search of Plaintiff's vehicle was performed, during which was discovered marijuana, THC wax, and a handgun, all of which were illegal for Plaintiff to possess." Answer 2, ECF No. 14. At no point during the traffic stop does Plaintiff identify himself to the officers. While searching Plaintiff's vehicle, the officers found a credit card in the center console with the name "Josh Lyons." *See* Video of Traffic Stop. The Defendant Officers then arrested Plaintiff for "possession of marijuana and possession of a controlled substance in violation of the Texas Health and Safety Code, and unlawful carrying of a weapon in violation of the Texas Penal Code." Answer 2, ECF No. 14. Plaintiff was subsequently booked into the Hudspeth County Jail. *Id*. Defendants admitted that "at all times relevant to Plaintiff's claims they were acting under the color of law and within the scope of their employment." *Id*.

Plaintiff has a different take on the events of September 9, 2022. Plaintiff claims that in responding to the traffic stop Defendant Smith "called his gang of domestic terrorists to the scene . . . [and] the two sheriff's deputies that arrived, began assisting the group of domestic terrorist (*sic*) in their unlawful actions." Compl. 1, ECF No. 3-1. Plaintiff alleges that "[a]ll defendants acted in concert to unlawfully arrest the plaintiff and violate his 4th and 5th

3

Amendment rights. By way of using fear, intimidation, and coercion to obtain all evidence." *Id.* at 1—2. Plaintiff's complaint and subsequent filings are rife with these kinds of legal conclusions and are wholly incoherent.

Before proceeding to analysis, the Court must address the fact that Plaintiff's claims contradict not only what Defendants say, but also what is in the body-worn camera recording provided by Defendants and on file with the Court. *See* Video of Traffic Stop *infra* at 2. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). For this reason, the Court will not adopt the version of facts that Plaintiff puts forth because they are blatantly contradicted by the video evidence.

## LEGAL STANDARDS

### I. Legal standard for Motion for Summary Judgment

Both Plaintiff and the Defendants move for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment "shall be rendered forthwith if . . . there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247—248. (1986). When seeking summary judgment, "the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenall*, 66 F.3d 715, 718 (5th Cir. 1995). A "material" fact is one "that might affect the outcome of the suit under governing law." *McCullough v. Wright*, 824 Fed. App'x 281, 284 (5th Cir. 2020). Only "facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. For a fact issue to be "genuine," the opponent to summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Stults v. Conoco*, Inc., 76 F.3d 651, 654 (5th Cir. 1996). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . there must be evidence on which the jury could reasonably find for the plaintiff" if the summary judgment is to be denied. *Anderson*, 477 U.S. at 252.

The moving party is "entitled to judgment as a matter of law" because the nonmoving party failed to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 317—18 (1986); *see also Anderson*, 477 U.S. at 247—48. If any factual inferences are made, these inferences "must be viewed in the light most favorable to the party opposing the motion." *Matushita*, 475 U.S. at 587. Once a properly supported motion for summary judgment is presented, "the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial." *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d 850, 853 (5th Cir. 1996).

## II.   Legal Standard for Qualified Immunity

Qualified immunity protects officers from liability when they are acting in their official capacity and under the color of law. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 335

(1986). Even officers who "reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (citation omitted). Where a defendant seeks qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The privilege of qualified immunity is "an immunity from suit rather than a mere defense to liability . . . [this immunity] is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 200—201.

Qualified immunity balances two very important interests – "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Specifically, qualified immunity shields "government officials from money damages unless (1) the official violated a statutory or constitutional right, and (2) that right was 'clearly established' at the time of the conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

In *Saucier*, the Court set forth a two-step inquiry to governing when to allow a defendant to claim qualified immunity. *See* 533 U.S. at 194. The first inquiry asks whether the facts alleged show that the officer violated a constitutional right. *Scott*, 550 U.S. at 377. After that is established, courts proceed to the second inquiry, "whether the right was clearly established . . . in light of the specific context of the case." *Id.* To be clearly established, "a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015).

## ANALYSIS

Plaintiff raises three issues in his motion for summary judgment. He moves the Court "to enter a partial summary judgment on the issues of qualified immunity, the Independent Intermediary Doctrine, and the *Heck* doctrine." Plaintiff's Motion ("Pl. Mot.") 1, ECF No. 21. Defendants respond to the issues of qualified immunity and the Independent Intermediary Doctrine but do not address the *Heck* Doctrine in their response and cross-motion. *See* Defendant's Motion ("Defs. Mot."), ECF No. 22. The Defendants also separately address Plaintiff's Fourth Amendment claims, Clearly Established Law claims, Fifth Amendment claims, and Conspiracy claims. *Id.* The Court will address each of these issues in turn.

### I. Qualified Immunity

The threshold question for a qualified immunity claim is whether a statutory or constitutional right would have been violated on the facts alleged. *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). The answer is resoundingly no. The Court finds that there is no genuine issue as to any material fact whether Defendant Smith and all defendants were entitled to qualified immunity.

In his Motion for Summary Judgment, Plaintiff claims that Defendants are no longer protected by qualified immunity. Pl. Mot. 1, ECF No. 21. He states that Defendant Smith "was given legal notice, which made him aware that the plaintiff was exercising his constitutional rights." *Id.* He also claims that "[w]hen the defendant took legal notice from the plaintiff and disregarded it, he knowingly violated the law" and was therefore "no longer protected by" qualified immunity. *Id.* Defendants, as is their right, "invoke their entitlement to qualified immunity." Defs. Mot. 6, ECF No. 22.

Defendant Smith pulled Plaintiff over on Interstate-10 in Hudspeth County, Texas, because he believed that Plaintiff was committing a traffic offense, namely speeding. Defs. Mot. 2—3, ECF No. 22. As a licensed state trooper and law enforcement officer, Defendant Smith is perfectly within his rights to pull Plaintiff over on the suspicion of speeding. The simple act of pulling Plaintiff over does not violate Plaintiff's rights, which would be required at minimum for Defendant Smith to lose his qualified immunity. *See Flores*, 381 F.3d at 395. After pulling Plaintiff over, Defendant Smith asked Plaintiff for very basic things, such as his driver's license and vehicle registration. *See* Video of Traffic Stop. Still, the Courts sees no violation of Plaintiff's rights, or even something slightly resembling a violation of Plaintiff's rights. Plaintiff then decides he does not want to comply with Defendant Smith's basic requests, and instead hands him a "legal notice." *see* Defs. Mot. Ex. B, ECF No. 22-2; *see* Video of Traffic Stop; *see also* Mot. 1, ECF No. 21. Plaintiff continued to refuse to identify himself or engage with Defendant Smith. *See* Video of Traffic Stop; *see also* Pl. Mot. 1, ECF No. 21. After asking Plaintiff dozens of times to identify himself (which Plaintiff refused), noticing Plaintiff's lack of license plates on his vehicle, and noticing two large dogs in Plaintiff's car, Defendant decided to call for backup. *Id.* Nothing that Defendant Smith did in his interaction with Plaintiff at the time of the traffic stop violates Plaintiff's rights, whether they are "clearly established" or not. *Scott*, 550 U.S. at 377.

Due to there being no genuine issue of material fact as to whether the Defendants are entitled to qualified immunity, the Court grants summary judgment for the Defendants on this issue and denies summary judgment for the Plaintiff.

## II.  Fourth Amendment

The Fourth Amendment states that the people have a right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. 4. Officers may arrest individuals without violating the Fourth Amendment "if there is probable cause to believe that the offender has committed even a very minor criminal offense in the officer's presence." *Atwater v. City of Lago Vista*, 532 U.S. 318, 322 (2001).

Probable cause can be established in a variety of ways. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Flores*, 381 F.3d at 402. Plaintiff claims that "defendant SMITH did not have probable cause of any criminal activity as stated in his report." Pl. Mot. 2, ECF No. 21. Defendants assert that the arrest, search, and seizure "were all constitutional." Defs. Mot. 10, ECF No. 22. The Court agrees, finding that Defendants are entitled to summary judgment as to any Fourth Amendment or false arrest claims that Plaintiff has made.

It is unquestionable that Defendant Smith had reasonable suspicion to stop Plaintiff for speeding. It is unquestionable that Defendant Smith had the authority to question Plaintiff. And it is unquestionable that Defendant Smith had probable cause to arrest Plaintiff after concluding that the suspect "had committed or was committing an offense" by refusing to identify himself, speeding on a public roadway, and traveling without proper identification and registration. *Flores*, 381 F.3d at 402. Defendant Smith acted reasonably, and he was correct in

believing the arrest to be lawful because he had probable cause that Plaintiff had committed a criminal offense. *See Atwater*, 532 U.S. at 322 ("An officer may arrest an individual without violating the Fourth Amendment if there is probable cause to believe that the offender has committed even a very minor criminal offense in the officer's presence.").

Defendants found evidence of other crimes when they searched Plaintiff's car pursuant to his lawful arrest. Answer 2, ECF No. 14 ("A probable cause search of Plaintiff's vehicle was performed, during which was discovered marijuana, THC wax, and a handgun, all of which were illegal for Plaintiff to possess."). Although this was a warrantless search, it was constitutional because it fell within an exception to the warrant rule, as described in *McCullough v. Wright*, 824 Fed. App'x 281 (5th Cir. 2020).

In *McCullough*, the arrestee refused to identify herself despite the police officers asking her to do so. 824 Fed. App'x at 287. Searching McCullough's wallet was the only way for the officers to identify her. *Id.* Similarly, Plaintiff refused to identify himself, and so Defendants searched his car looking for anything that would help them identify him. *See generally* Defs. Mot. 4, ECF No. 22; *see also* Video of Traffic Stop. Upon searching his car, Defendants found a business card with Plaintiff's name on it which allowed them to identify him. Defs. Mot. 4–5, ECF No. 22. In the process they also found other contraband that Plaintiff says were "fruit[s] of the poisonous tree." Compl. 7, ECF No. 3-1. This search is allowed under the law and was not an illegal search.

In order for Plaintiff to prevail on this issue, and the issue of qualified immunity, he would have to show specifically that the officers violated "clearly established law" at the time of his arrest. *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). But Plaintiff provides the

Court no evidence showing that Defendants violated clearly established law in pulling him over and arresting him.

Due to there being no genuine issue of material fact on Plaintiff's Fourth Amendment claims, the Court grants summary judgment for the Defendants on this issue.

### III. Fifth Amendment

In his complaint, Plaintiff claims that Defendant Smith "initiated an unlawful detention of plaintiff. Who was exercising his 5th amendment right to travel freely as part of liberty." Compl. 7, ECF No. 3-1. Plaintiff also states that Defendant Smith "declared an emergency and impeded the free travel of the plaintiff for civil statutory regulation, not crime." *Id.* Plaintiff does not address his Fifth Amendment claims in his Motion for Summary Judgment, but the Defendants do address them in their cross-motion for Summary Judgment. Defs. Mot. 11, ECF No. 22.

In response, Defendants cite to *Morin v. Caire,* which held that "the Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government." 77 F.3d at 120. Since Defendant Smith is not a federal agent, Defendants claim that the Fifth Amendment does not apply to him. Defs. Mot. 11, ECF No. 22. The Court agrees with defendants without further analysis. Due to there being no genuine issue of material fact on whether the Fifth Amendment applies to state officials, the Court grants summary judgment for the Defendants on this issue and denies summary judgment for the Plaintiff.

### IV. Independent Intermediary Doctrine

Plaintiff moves this Court to grant him summary judgment on his Fourth Amendment claims because the Independent Intermediary Doctrine has been rejected by the

Supreme Court. *See* Pl. Mot. 2, ECF No. 21. He alleges that Defendant Smith "is not entitled to the Independent Intermediary Doctrine as no independent judge would find probable cause existed to detain the plaintiff . . ." *Id.* Defendants claim that they are "shielded from civil rights liability by the Fifth Circuit's independent intermediary doctrine." Defs. Mot. 12, ECF No. 22.

Under the Independent Intermediary Doctrine, "even an officer who acted with malice . . . will not be liable if *the facts* supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or grand jury, for that intermediary's 'independent decision' breaks the causal chain and insulates the initiating party." *Buehler v. City of Austin*, 824 F.3d 548, 554 (5th Cir. 2016) (quoting *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988).

Even if Defendant Smith had been acting with malice, the Independent Intermediary Doctrine would still shield him from liability because "[t]he charges stemming from Lyons' arrest were placed before a Hudspeth County Magistrate, and probable cause [was] found." Defs. Mot. 12, ECF No. 22. Because the charges were placed before a neutral magistrate and probable cause was found, Defendant Smith and the other Defendants are entitled to be shielded from civil rights liability by the Independent Intermediary Doctrine. *See* Defs. Mot. Ex. B 10—15, ECF No. 22-2.

Due to there being no genuine issue of material fact on whether the Defendants are shielded by the Independent Intermediary Doctrine, the Court grants summary judgment for the Defendants on this issue and denies summary judgment for the Plaintiff.

12

### V.     *Heck* Doctrine

Plaintiff argues that "the defendants are not entitled to use the *Heck* Doctrine to bar this claim." Pl. Mot. 2, ECF No. 21. Defendants do not respond to this specific issue in their cross-motion/response.

The *Heck* Doctrine "emanates from the policy of finality that prevents the collateral attack of a criminal conviction once that matter has been litigated." *Connors v. Graves*, 538 F.3d 373, 378 (5th Cir. 2008) (citation omitted). Under *Heck*, "the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 376 (citation omitted). The claim would be barred under the *Heck* Doctrine "unless [Plaintiff] proves that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* (citation omitted).

Plaintiff has not provided the Court with any evidence that his state criminal charges have been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* Unless that is the case, Plaintiff's claims are barred by the *Heck* Doctrine. The Court therefore denies summary judgment for Plaintiff on this issue. He has not provided the Court with the information that it needs to make this determination.

Due to there being no genuine issue of material fact on whether there is a triable *Heck* Doctrine issue, the Court grants summary judgment for the Defendants on this issue.

13

## VI. Conspiracy

In his complaint, Plaintiff claims that "[a]ll six (6) defendants did knowingly and intentionally conspired (*sic*) to interfere with the civil rights of the plaintiff." Compl. 7, ECF No. 3-1. The specific conspiracy, Plaintiff claims, is that the Defendants "went onto the highway in disguise as peace officers, while acting under the color of law. In order to kidnap, steal, and extort the plaintiff of life and property without due process of law." *Id.* Plaintiff does not address the Conspiracy claims in his Motion for Summary Judgment, but the Defendants do address it in their cross-motion for Summary Judgment. Defs. Mot. 11—12, ECF No. 22. Defendants claim that Plaintiff's conspiracy claim under 42 U.S.C. Sec. 1985(3) necessarily fails because these types of claims "require some sort of class-based discrimination." Defs. Mot. 12, ECF No. 22. The Defendants are correct.

Section 1985(3) "criminalizes only conspiracies that involve depriving someone of equal protection of the laws or equal privileges and immunities under the laws." *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (citation omitted). The legislative history of Sec. 1985(3) establishes that it requires "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators action." *Scott*, 550 U.S. at 834. Defendants were not engaged in any sort of a conspiracy to "kidnap, steal, and extort the plaintiff of life and property without due process of law," but even if they had been, Plaintiff's claims would still fail. Compl. 7, ECF No. 3-1. Plaintiff would need to establish that this alleged conspiracy was class-based, race-based, or involved some other form of invidious discrimination, which he simply cannot do.

Due to there being no genuine issue of material fact on whether there is a triable Conspiracy issue, the Court grants summary judgment for the Defendants on this issue.

## CONCLUSION

Plaintiff Joshua Lyons argues that Defendant Jason Smith and the other law enforcement Defendants violated a multitude of his rights when they stopped his car and arrested him on September 9, 2022. *See* Pl. Mot., ECF No. 21. Defendants argue that Plaintiff Joshuan Lyons' arguments lack merit and should be disposed of.

The Court finds that Plaintiff Joshua Lyons has not provided specific facts that establish a genuine issue concerning every essential component of the case. The Court also finds that Defendants did provide specific facts that establish there are no genuine issues of material fact as to essential components of the case. This memorandum opinion accompanies the orders the Court issued on July 18, 2023, wherein the Court denied Plaintiff's Motion for Summary Judgment, ECF No. 21, and granted Defendants' Motion for Summary Judgment, ECF No. 22.

SIGNED this 13th day of **December 2023**.

_____
THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE